UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHLA DREIBAND,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KIRSTJEN NIELSEN, SECRETARY,<br>U.S. DEPARTMENT OF<br>HOMELAND SECURITY,<br><br>　　　　Defendant. | Civil Action No. 17-891 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Mahla Dreiband is an Information Technology Specialist with the Department of Homeland Security. In this *pro se* Title VII suit, she alleges that her employer discriminated against her on the basis of her national origin and disability, retaliated against her for filing a complaint with the Equal Employment Opportunity office, and subjected her to a hostile work environment. She also seeks to recover damages under the Equal Pay Act, alleging that she was the victim of wage discrimination. Defendant now moves for summary judgment, contending that Plaintiff has offered no material facts to demonstrate that she suffered any adverse employment actions, that she was subjected to discrimination or a hostile work environment, or that she was the target of retaliation. Instead, DHS asserts that the five-day suspension of which she complains had a legitimate, non-discriminatory basis – a physical altercation with another Department employee. Agreeing, and also finding no jurisdiction for her pay claim, the Court will grant the Motion.

1

## I. Background

### A. Factual History

As it must at this stage, the Court sets out the facts here in the light most favorable to Plaintiff. Dreiband, whose national origin is Iranian and who suffers from a disability of "pre-arthritis," see ECF No. 14 (Amended Complaint), ¶¶ 11-12, was hired as an IT specialist for DHS in 1989. Id., ¶ 15. Since 2003, she has worked for U.S. Immigration and Customs Enforcement, which is a component of DHS. Id., ¶ 16. At the time at issue in the Complaint, Plaintiff worked at level GS-2210-12 in ICE's Office of the Chief Information Officer. See Def. Exh. B-1 (Report of Investigation) at 22.

Between 1998 and 1999, Dreiband worked on the same team as Nancy Luc, another IT specialist with DHS and the woman who, over a decade later, Plaintiff would allege assaulted her in a gym locker room. See Compl., ¶¶ 18-20. In 1998, Dreiband filed an EEO Complaint against Luc citing her "harassment towards Plaintiff." Id., ¶¶ 13, 18. After requesting reassignment, Dreiband was moved from Luc's team in or around 1999. Id. Although they were no longer co-workers, Plaintiff and Luc continued to work in the same office building. Id., ¶ 19. On February 7, 2014, the two women found themselves in the locker room of Vida Gym, a facility at which ICE employees have membership. Id., ¶ 27. While the specific facts of what happened in the gym are in dispute, both sides agree that Dreiband and Luc were involved in a physical altercation that resulted in the former being bitten by the latter. Id., ¶¶ 28-29; ECF No. 20-1 (DSMF), ¶ 3. The police were called to the scene, and both women were subsequently arrested. Id., ¶ 5.

Following this incident, Defendant opened an administrative inquiry, which ultimately led to the suspension of both women. See Def. Exh. G-3 at 168. On July 18, 2014, Plaintiff was

issued a notice of a proposed, five-day suspension without pay for engaging in conduct unbecoming a federal employee. See Def. Exh. G-4 at 171. Dreiband responded to the proposed suspension via her attorney on August 7, 2014, stating that the penalty should not be sustained because "Ms. Dreiband was the innocent victim of a malicious attack by Ms. Luc." ECF No. 20-9 (Response to Proposed Suspension). That October, the Acting Chief Information Officer, Steven Smith, issued a decision sustaining the charges and the penalty, finding that the "alleged misconduct [was] supported by a preponderance of the evidence." Def. Exh. G-6 at 189. Plaintiff served her five-day suspension from October 9 to October 13, and Luc served hers from November 7 to November 11. See DSMF, ¶¶ 11-12. Dreiband alleges that "[f]ollowing the attack," Luc "told numerous coworkers and supervisors" that Plaintiff had initiated the fight at the gym. See Compl., ¶ 36. Although Dreiband states that she complained to management about such statements, she asserts that her supervisors did not intervene. Id., ¶ 37.

The next relevant incident occurred on May 2, 2014, when an ICE manager sent Plaintiff, as the property custodian for her office, an email identifying missing government property. See Def. Exh. G-12 at 242. Dreiband responded that she had located the assets, id. at 244, but Leonard Pulley, the Chief of the Network and Infrastructure Services Branch, replied that the inventory had in fact been located by two other individuals and that two items remained missing. Id. at 242-43. Plaintiff in turn responded that she was confused about Pulley's characterization, but he did not reply to that email. Id. at 242.

The same day, Plaintiff received her Fiscal Year 2014 mid-year performance evaluation. Dreiband's supervisor gave her a rating of "fully satisfactory" for the elements of technical proficiency, customer service, project management, and information-systems security. See Def. Exh. G-10 at 215-25. For the element of teamwork, cooperation, and collaboration, however,

3

Plaintiff's evaluation stated that she "ha[d] much room for improvement," noting that she was "involved in an altercation in early FY14 with another ICE . . . employee" and that she had been counseled on two separate occasions regarding management policy and guidance. Id. at 222-23.

B. Procedural History

On October 20, 2014, Plaintiff contacted an EEO Counselor regarding her suspension and treatment after the gym altercation. See Def. Exh. B-1 at 22. Three months later, ICE notified Dreiband that her counseling had concluded and informed her of her right to file a formal complaint, a step she took on January 28, 2015. See Def. Exh. A-1 at 17-19. Plaintiff's complaint was filed with ICE's Office of Diversity and Civil Rights (ODCR) and presented the following claim: ICE discriminated against her and subjected her to a hostile work environment based on national origin, religion, age, disability, and reprisal when (1) a co-worker physically attacked Plaintiff; (2) during an internal investigation of the incident, the co-worker made false statements about Dreiband's work performance and told the investigator that Plaintiff was moved to a different office fifteen years prior; (3) management issued Dreiband an unfavorable mid-year review and accused her of inappropriate accounting for government property; and (4) Plaintiff was suspended for five days. See Def. Exhs. C-2 at 97, C-3 at 102.

In August 2015, ODCR provided Dreiband with a Report of Investigation (ROI) and ultimately the final agency decision. See Def. Exhs. D (Notice Letter), E (FAD Request). She responded by filing suit in this Court on May 12, 2017. Dreiband's Amended Complaint, which was filed in March 2018, alleged three grounds for relief under Title VII – national-origin discrimination, hostile work environment, and retaliation – and three others under the Rehabilitation Act – disability discrimination, retaliation, and hostile-work environment. See Compl., ¶ 1. Plaintiff also alleged, although she did not include any relevant count, that her

4

action sought to "recover damages" under the Equal Pay Act. Id., ¶ 2. DHS now moves to dismiss or, in the alternative, for summary judgment. See ECF No. 17.

## II. Legal Standard

As the Court considers the Motion under the summary-judgment standard, it sets out that one alone. Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. See Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). In light of this requirement, and pursuant to Local Civil Rule 7(h) and Federal Rule 56(c), the Court, in resolving summary-judgment motions, "assume[s] that facts identified by the moving party in the statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

### III. Analysis

Because the standards articulated in employment-discrimination cases apply to claims brought pursuant to the Rehabilitation Act, the Court will address Plaintiff's discrimination counts under the framework of Title VII. See Walker v. D.C., 279 F. Supp. 3d 246, 271 (D.D.C. 2017). It will then separately analyze her retaliation, hostile-work-environment, and Equal Pay Act claims.

#### A. Discrimination

Title VII prohibits an employer from discriminating against an employee because of her national origin or other protected characteristic. See 42 U.S.C. § 2000e-2(a). To prevail on such a claim, a plaintiff must follow the three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. Id. at 802. "If the plaintiff meets this burden, '[t]he burden then must shift to the employer to articulate some

legitimate, nondiscriminatory reason' for its action. If the employer succeeds, then the plaintiff must 'be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext' for unlawful discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (quoting McDonnell Douglas, 411 U.S. at 802, 804). When, however, "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — and should not — decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). The Court's sole task in such cases is to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Id. To defeat summary judgment, moreover, the plaintiff must "present[] enough evidence to allow a reasonable trier of fact to conclude that the employer's proffered explanation is unworthy of credence." Desmond v. Mukasey, 530 F.3d 944, 962 (D.C. Cir. 2008) (internal quotation marks and citation omitted).

Here, many of the bases for Plaintiff's discrimination claims get stuck at the starting block. Even under the streamlined Brady inquiry, the employee must have "suffered an adverse employment action," 520 F.3d at 494, defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). As DHS points out, the majority of actions discussed in Dreiband's Complaint do not meet this test. Specifically, Plaintiff's allegations that she was discriminated against when she received a

negative performance appraisal, when she was "accused of inappropriate accounting" of government inventory, and when her co-worker made negative statements about her past performance do not constitute adverse actions under Title VII. Dreiband offers no evidence that any of these acts resulted in a change in her benefits, responsibilities, or job title, and they therefore cannot provide the basis for her discrimination count. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (finding no adverse action for discrimination claim when Plaintiff "was not fired or denied a job or promotion," "did not suffer any reductions in salary or benefits," and was not given "significantly different—and diminished—supervisory and programmatic responsibilities").

This leaves standing only Plaintiff's five-day suspension as the underlying adverse action. See Jones v. Castro, 168 F. Supp. 3d 169, 183–84 (D.D.C. 2016) (five-day unpaid suspension constitutes adverse action for Title VII claim). The question for the Court is thus whether a jury could find that this suspension was the result of discrimination. Because DHS has asserted a legitimate, nondiscriminatory reason for the action – namely, Dreiband's involvement in the gym altercation – the Court need only consider whether Plaintiff "produced evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [Dreiband] based on" her national origin or disability. See Brady, 520 F. 3d at 495.

Plaintiff here has not produced any direct evidence of discriminatory intent behind her suspension, nor has she proffered any other evidence that discredits the Department's stated rationale. Her Complaint may allege that "management has never disciplined an employee who was not Iranian [and] did not have disabilities . . . for being physically attacked by a coworker," Compl., ¶ 35, but she presents no record support for this claim nor any other facts supporting an

8

inference that her national origin or disability gave rise to the suspension. The Letter of Suspension, moreover, makes clear that Dreiband's penalty was for "conduct unbecoming an agency employee" – namely, being "involved in a physical altercation." ECF No. 20-10, (Def. Exh. G-6) at 189. The Court notes, moreover, that Luc was <u>also</u> given a five-day suspension after the gym incident, and that she is not Iranian. <u>See</u> Def. Exh. F-3 (Witness Affidavit of Nancy Luc), at 133-34. In sum, given the dearth of record evidence in support of Plaintiff's claim that the suspension was the result of discriminatory animus, rather than her conduct at the gym, the Court concludes that no reasonable jury could find that Dreiband was discriminated against in violation of Title VII or the Rehabilitation Act.

    B. <u>Retaliation</u>

In addition to alleging discrimination, Plaintiff also claims that she was retaliated against in violation of Title VII and the Rehabilitation Act. To prove retaliation under both statutes, a plaintiff generally must establish that she suffered (i) a materially adverse action (ii) because she had engaged in protected activity. <u>See</u> 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 791 *et seq*.; <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006); <u>see also Bowden v. Clough</u>, 658 F. Supp. 2d 61, 86 (D.D.C. 2009) (evaluating Title VII and Rehabilitation Act claims under same standard). As with the discrimination counts, the threshold question here is thus whether Dreiband suffered the requisite "adverse action."

This Circuit has distinguished between the meaning of a "materially adverse action" in the context of a retaliation claim and such actions necessary to support an allegation of discrimination. Although the former encompass a "broader sweep of actions" than the latter, <u>see Baloch</u>, 550 F.3d at 1198 n.4, acts underlying a retaliation claim must still be <u>material</u> to the plaintiff's employment, meaning that they would have "'dissuaded a reasonable worker from

9

making or supporting a charge of discrimination.'" Crowley v. Vilsack, 236 F. Supp. 3d 326, 330 (D.D.C. 2017) (quoting Burlington N., 548 U.S. at 68). Under this standard, the Court concludes that the suspension is once again the only relevant adverse action. Dreiband's claims of having been the subject of negative comments, having been emailed regarding the missing inventory, and receiving a less-positive performance review each fall short of supporting a retaliation claim. See Baloch, 550 F.3d at 1199 (for retaliation claims, performance reviews "typically constitute adverse actions only when attached to financial harms"); Taylor v. Small, 350 F.3d 1286, 1296 (D.C. Cir. 2003) (granting summary judgment for defendant when plaintiff did "not point to a scintilla of evidence suggesting that" employment actions – including performance reviews – "had a material adverse effect upon the terms or conditions of her employment"); cf. Brown v. Mills, 674 F. Supp. 2d 182, 191-92 (D.D.C. 2009) (despite plaintiff's allegations that an investigation "cast . . a shadow" on her employment, caused her emotional distress, and made co-workers reluctant to work with her, she failed to establish adverse action).

Turning to the suspension, the Court finds that Plaintiff is unable to demonstrate any causal connection between her prior EEO complaint in 1998 – the only action she identifies as protected activity – and her five-day penalty sixteen years later. See Leipzig v. Astrue, 947 F. Supp. 2d 118, 122 (D.D.C. 2013), aff'd sub nom. Leipzig v. Colvin, No. 13-5191, 2013 WL 6222953 (D.C. Cir. Nov. 19, 2013) (dismissing retaliation claim when plaintiff asserted "no facts to support the great inferential leaps that she asks the Court to make" between her "EEO communications" and the alleged adverse action). This decade-plus interval between her protected activity and the suspension is a far cry from the temporal proximity required to infer a causal nexus. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding

that three- or four-month period is insufficient to show causal connection); Baker v. Potter, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two months may create too wide a temporal chasm to give rise to inference of causal connection). In any event, Plaintiff offers no evidence whatsoever for a jury to conclude that her suspension had anything to do with her protected activity and not the locker-room dispute. Summary judgment is warranted here as well.

C. Hostile Work Environment

Next up are Plaintiff's hostile-work-environment claims. To prevail on such allegations, she must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted). To determine whether such an environment exists, courts looks to the totality of the circumstances, including the frequency of the conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. See Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998).

Here, Dreiband falls far short of this bar. Her allegations regarding the work environment at ICE consist solely of conclusory and vague statements that she was "harassed, stressed, [and] overworked," ECF No. 21 (Obj. to DSMF), ¶ 3, and that she "has been subjected to defamation of character[] and workplace harassment . . . by Nancy Luc." ECF No. 23 (Opposition) at 2. Such general assertions of "harassment" do not suffice to make out a hostile-work-environment claim. There is no indication in the record that any of the alleged acts interfered with Dreiband's work performance, nor that they were based in any way on her membership in a protected class or on her protected activity. See Baloch, 550 F.3d at 1201 (rejecting hostile-work-environment claim when none of the actions "expressly focused on

[Plaintiff's] race, religion, age, or disability" and were "not supported by evidence of tangible workplace consequences"); Walston v. Foley and Lardner, LLP, 516 Fed. Appx. 1, 1 (D.C. Cir. 2013) ("Title VII does not prohibit all forms of workplace harassment, only those directed at discrimination because of [membership in a protected class].") (internal quotation omitted). Plaintiff's workplace tension with Luc and vague allegations of harassment do not, therefore, rise to the level necessary for a hostile-work-environment claim, and the Court will thus grant summary judgment for DHS.

### D. Equal Pay Act

Finally, the Court briefly addresses Plaintiff's reference to the Equal Pay Act. It first notes that although she mentions the statute in the opening paragraphs of her Complaint, she includes no specific count alleging a violation. Construing the Complaint liberally as Dreiband is *pro se*, however, the Court concludes that any claim she intended to raise under the Act cannot be brought here. Defendant correctly notes that, pursuant to the "Little Tucker Act," jurisdiction over Plaintiff's Equal Pay Act allegation lies solely in the United States Court of Federal Claims, as it seeks more than $10,000 from the federal government. See, e.g., Schrader v. Tomlinson, 311 F. Supp. 2d 21, 25 (D.D.C. 2004) (finding that pursuant to "Little Tucker Act," Equal Pay Act claim must be brought in Court of Federal Claims). The Court therefore concludes that it would have no subject-matter jurisdiction over her Equal Pay Act claim, even if properly pleaded.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 3, 2018